Hitchcock, J.
Two questions are raised for the consideration of the court in this case:
1. Whether the plaintiff is entitled to judgment for the amount of notes acquired by him subsequent to the ^commence- [528 ment of the suit, and which are now giyen in evidence?
2. If he is entitled to such judgment is ho entitled to interest, and from what time should the interest be computed?
As a general rule, it is well settled that the rights of parties litigant must be adjudicated as they wore at the commencement of the suit. And if a plaintiff has no cause of action when his writ is issued, ho can not subsequently acquire a right which can be enforced in such suit. Apply this principle to the present case, and the plaintiff could only recover a judgment for the amount of notes which he demanded on the 21st of April, with interest from that date. He would be precluded from the recovery of the 84,080.
It is supposed, however, by his counsel that a different rule prevails where a suit is brought against a bank to recover upon its notes or bills, and they refer to the act of January 28, 1824, “to regulate judicial proceedings where banks and bankers are par.ties,” and rely upon this act as sustaining them in this position. It is perhaps a little singular that although this law has been in force for seventeen years, and was preceded by a similar law as early as 1819, this court has never before been called upon to give to it a construction. A case was reserved in Cuyahoga county some two or three years since for the express purnose of obtaining the opinion of the court upon this law, -but it was settled by the parties, and never brought before the court. But perhaps this is to be accounted for by the fact, that from the passage of the law until within three or four yeai’S past, the banks of the state redeemed their notes when demanded.
The legislature, in the enactment of this law, intended to give an easy and effectual remedy to those who held the notes of a bank which did not redeem its promises, and to make it the interest of all such institutions to deal honestly and fairly. If there is anything of apparent severity in the law, it can not be at *529, 530 tributed to any prejudice existing in the body who passed it 529] against banks. No such prejudice existed. They *were supposed to be institutions necessary to the welfare and prosperity of the country. There was the same disposition to do justice to them as to individuals. According to our understanding of the law, there is nothing in it which will operate unjustly. It may change some of the rules of pleading and evidence as known to the common law, but it is done only for the furtherance of justice.
The first section of the law, and this is the only section with which we have anything to do in the present case, provides, “ That in all actions brought against any bank or banker, whether of a public or private character, to recover money due from such bank or banker, on notes or bills by him or them issued, the plaintiff may file his declaration for money had and received generally, and on trial may give in evidence, to support the action, any notes or bills of such bank or banker, which said plaintiff may hold at the time of trial, and may recover the amount thereof, with interest lrom the time the same shall have been presented for payment and payment thereof refused, or from the time such bank or banker shall have ceased and refused to. redeem his notes with go'od and lawful money of the United States.”
This section would seem "to be sufficiently explicit in its terms, with respect to the rights of a plaintiff in introducing evidence, and in securing to him a judgment for the entire amount of notes and bills given in evidence. If is strongly urged, however, by the defendant’s counsel, that this statute should not have a literal construction, so far as to secure to a plaintiff a judgment for any greater amount than he was entitled to at the commencement of the suit. In other words, that the statute shall not be so construed as to infringe the general rule, that the rights of parties shall be adjudicated upon as they wore at the commencement of the suit. And it is claimed that the intention of the legislature was to permit a plaintiff who had in his possession notes or bills of a bank at the time of the commencement of a suit, but had afterward disposed of them, to give in evidence notes or bills of an equal amount, which he might have acquired at a subsequent period, but pre580] vious *to the trial. This certainly would be a forced construction of the law, and would equally interfere with the rule referred to. New rights would have been acquired, and those new rights would be the rights adjudicated.
*531 Tho legislature passing this law intended undoubtedly to interfere with this rule. They, entertained the opinion that no bank ought to enter into obligations beyond what it could meet, nor ought it to throw into circulation a currency which would be irredeemable. To prevent such course of conduct they intended to give to a bill-holder a speedy and effectual remedy to redeem the amount of bills in his hands, not only such as he might have on hand at the time of the commencement of the suit, but such as might subsequently and before judgment come into his possession. It is not perceived that there is anything wrong in this. The paper of a bank is intended and designed, when issued, to pass and circulate as money; it is loaned as money, it is received as money) and if it fails in fulfilling the object for which it is intended, those who have it in possession ought to have every needful facility furnished by law for changing it into money.
It is true, that under this law it is possible that a judgment may be recovered against a bank upon its paper, when it has never refused to redeem it. But such institutions have nothing to fear. No man having a bank note will ever commence suit upon that note if he can receive its amount upon demand. Nor if he has commenced a suit, will he collect in other paper, merely for the purpose of enhancing the amount of his judgment. But even should such an event happen, it can do the bank no essential injury. The only difference it will make will be that the institution will have to redeem its paper in the hands of tho sheriff instead of the bill-holder, with perhaps a little additional cost.
There may be, and undoubtedly are, circumstances occasionally occurring which may in some measure excuse one of theso institutions in a temporary suspension of-the redemption of its paper. But when such is the fact they are less likely to suffer than individuals placed under like circumstances. Let *this be as it [581 may, however, there is no more reason why the courts of justice should be closed against those who have claims against banking institutions, than against those who have claims against other corporations, or against individuals.
In any view which we can take of the subject, it seems to us clear under this statute, that in a suit against a bank, the plaintiff “ may give in evidence, to support the action, any notes or bills of such bank which said plaintiff may hold at the, time of trial, and may recover the amount thereof.”
*532 But it is said, by giving this construction to the act, it will conflict and be inconsistent with many parts of the act regulating the practice of the judicial courts. And reference is more particularly made to those parts of the practice act, which require that the cause of action and the amount due shall be indorsed on the writ, and that the plaintiff shall, upon demand, furnish a bill of particulars. Without going into a particular examination of these objections, it is sufficient to say that the practice act prescribes general rules for the practice of the court. The same power which prescribed these rules, may dispense with them in a particular class of cases. The act of 1824 is limited to a particular class of cases, to wit, cases in which a bank or banker is a party. And if, in order to give effect to this law, as applicable to this class of cases, it becomes necessary to depart from any of the general rules of practice, it must be done. Whether it is in fact necessary, we do not now undertake to decide.
The second question raised in the case is, whether the plaintiff is entitled to interest, and if so, from what time shall interest be computed.
In the disposition of this question, there is more difficulty. The statute provides that the plaintiff may recover the amount of the notes and bills given in evidence, “ with interest from the time the same shall have been presented, and payment thereof refused, or, from the time such bank or banker shall have ceased and refused to redeem, his notes with good and lawful money of the United States.”
The defendants in this case do not object to a judgment for 583] ^interest upon such notes as have been presented for payment, and payment refused, but the objection is to a judgment for interest on the whole amount of notes given in evidence, whether the same had or had not been presented for payment. The provision of the law is, that a demand of payment shall entitle tho holder of a note to interest from the time of such demand, or that a general refusal to pay, or general suspension of payment, shall i confer the same right from the date of the suspension. Under this latter provision the counsel for plaintiff claims that he is en- ' titled to interest, as well on the $4,080 as on the $719.
With a view to ascertain the meaning of the legislature upon this subject, it may be well to look at the previous legislation. The first act which we find in the statute book, “To regulate judicial proceedings where banks and bankers are parties,” was en *533 acted on February 5,1819. Chase’s L. 1076. The first section of this act is like the first section of the act of 1824, so far as respects the form of pleading, the evidence to be given on the trial, and the amount to be recovered. But it differs with respect to the interest. The plaintiff is entitled to recover the amount of notes given in evidence “ with interest on the whole, or any one or more of such bills or notes, from the day the same was presented for payment,s and payment thereof refused. This act was repealed on February 18,1820, by an act of that date of the same title. Chase’s L. 1134. The first section of the act of 1820 is like the act of 1819 as to the pleadings and evidence, precisely the same as to_ interest. By these statutes it is clear that no interest'could be computed until after demand made. Although notes might be given in evidence which had not been demanded, and their amount might be recovered, yet it was without interest. The' law of 1824 was intended to change this rule as to interest.
By the law of 1824, the legislature manifestly intended to provide for two classes of cases: 1. Where a bank is in the practice of redeeming its notes, if suit is brought against it, although the plaintiff may give in evidence any notes or bills of *whieh [533 he is in possession, and may recover a judgment for the full amount of such notes, still he shall recover no interest unless payment of such notes shall have been previously demanded, and then only from the time of demand. 2. Where a bank shall suspend payment generally in lawful money of the United States. In such case, if sued, it must pay interest on its notes or bills from the time of such suspension. In this latter case a demand is dispensed-with, because it would be of no avail. It seems to have been contemplated by this law, that from the time of suspension by a bank,, its notes and bills in circulation should be upon interest, and if suit bo brought this interest may be recovered, and it is provided in section 11 of the act, “ that when any bank or banker shall commence and continue to redeem their notes and bills with lawful money, the interest on their bills and notes shall cease from the commencement of such redemption,” etc.
Is there anything unjust in all this ? Individuals not complying with their contracts are compelled to pay interest, and it is not improper that the same measure of justice should be meted out to banks. It is.only when they fail to fulfill the object of their creation that they incur this liability; when they return'to the- *534 path of duty the liability ceases. They ought to be, and must be, fully protected in all the rights secured to them by their charters of incorporation. Beyond this they can claim no special indulgence.
It is true there seems to be some impropriety in giving to a man who may have been possessed of the notes of a bank but for a day or a week, interest upon such notes for six months or a year, especially when he may have received them at their nominal value or at a discount. But this is not a matter of which the bank can complain. It is liable for the interest, and it can make no difference as to whom it is paid. The same difficulty always occurs when a promissory note or other contract for the payment of money has been transferred at a discount..
But it is complained by defendant’s counsel that this construction of the law will bear peculiarly hard upon a bank 584] *which bas issued notes after a suspension, if they are compelled -to pay interest upon such notes from the time of the suspension, or, in other words,.from a time anterior to their having been issued. Possibly, if the notes bear date and were proven to have been issued after the suspension, interest would only be computed from the date of such note. But should it be otherr wise there is no cause of complaint. This law now under consideration is no new enactment. It has long been in force. It is known to the officers of banks, and if they will, having tho law before them, issue paper, they must do it at their peril. A l^ank which can not redeem the paper which it has in circulation, certainly ought not to issue any more. Duty requires of it to contract, instead of expanding its circulation. If it pursues a different course, it must do it at tho risk of consequences.
Tho case of Goodman v. Duffield, Wright, 455, has been rited by both parties as an authority in this case. In that case the notes given in evidence were all in possession of the plaintiff before tho commencement of the suit. The court say the lav of 1824 does not change the law of the action as respects parties and privies. Nor does it, for without that law the holder of banknotes could maintain an action against the bank if payment was refused. He would be the only proper person to maintain the action. Tho rule of evidence as prescribed in the statute is fully recognized in that case.' The case itself was decided in favor of •the defendant, not on account of any defect in plaintiff’s proof, but *535 because the proof exhibited by the defendant was such as to show clearly that the plaintiff had no right of action.
According to the construction which we give to the act of 1824, the plaintiff is entitled to a judgment for the full amount of the notes given in evidence, together with interest from April 19, 1841. Judgment for the plaintiff.